UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ANTHONY COLEMAN,

                              Petitioner,

            -against-

STEVEN RACETTE,

                              Respondent.
-------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

15 Civ. 4904 (NSR)(JCM)

To the Honorable Nelson S. Román, United States District Judge:

Petitioner Anthony Coleman ("Petitioner"), proceeding *pro se*, filed a petition for a writ

of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition").[1] (Docket No. 2).  Respondent

opposed the Petition, (Docket No. 15), and Petitioner replied, (Docket No. 19).  For the reasons

set forth below, I respectfully recommend that the Petition be denied in its entirety.

## I.  BACKGROUND

### A.  The Crime and Arrest

Petitioner's incarceration arises from an incident in which he was found in possession of

a loaded semi-automatic pistol and additional cartridges.  Construing the evidence in the light

most favorable to the state, *see, e.g.*, *Murden v. Artuz*, 497 F.3d 178, 184 (2d Cir. 2007), the

following facts were established at trial.

On January 26, 2010, at approximately 10:50 p.m., Yonkers Police Officers Robert

McLaughlin and Neil Vera were on patrol in a marked police vehicle when they drove past an

---

[1] A *pro se* prisoner's papers are deemed filed at the time he or she delivers them to prison authorities for forwarding to the court clerk. *Houston v. Lack*, 487 U.S. 266, 276 (1988); *see also Walker v. Jastremski*, 430 F.3d 560 (2d Cir. 2005) (analyzing the *Houston* "prison mailbox rule").  Petitioner certified that he delivered his original Petition to prison authorities for mailing on June 15, 2015. (Docket No. 2 at 15).  Unless otherwise noted, the Court adopts Petitioner's dates for this filing and for all other filings discussed herein.

apartment building at 175 Stanley Avenue, Yonkers, New York. (Trial Transcript[2] at 200–02).
The officers observed approximately ten individuals standing on an outdoor landing on the
second floor of the building. (*Id.* at 202, 229). The officers circled the area, parked the vehicle in
front of a bar on Riverdale Avenue, and began walking through a wooded area towards the rear
of the apartment building. (*Id.* at 202–03). Officers Thomas Spaun and Tim Cooper, who were
on patrol in another police vehicle, parked in front of 175 Stanley Avenue and walked towards
the front of the building. (*Id.* at 288–89).

As Officers McLaughlin and Vera approached the rear of the building, Officer
McLaughlin observed Petitioner wearing a black and blue bookbag among the individuals on the
landing. (Trial Transcript at 203, 207). Officer Spaun also saw Petitioner wearing a dark colored
bookbag from the front of the building. (*Id.* at 294). Petitioner faced Officer McLaughlin's
direction, backed away from the group, and attempted to enter an apartment. (*Id.* at 203–04, 291–
92). Following this, both McLaughlin and Spaun observed Petitioner approach the stair railing
and throw the bookbag over the railing, which landed approximately five feet away from where
McLaughlin was positioned. (*Id.*). Officer McLaughlin saw a barrel of a firearm and a portion of
a magazine clip attached to the firearm protruding from the bookbag. (*Id.* at 204–05). Following
this, Officer McLaughlin announced that there was a gun in the bag over his radio. (*Id.* at 205–
07).

Officer Spaun heard Officer McLaughlin's announcement. (Trial Transcript at 292). As
he approached the landing stairs, Spaun ordered the group of ten individuals to the ground. (*Id.*).
Officer Cooper handcuffed Petitioner and Officer Spaun called for back-up over the radio. (*Id.* at

[2] Refers to Petitioner's criminal trial transcript, dated March 23–24 and 28, 2011. The transcripts related to Petitioner's criminal matter were not filed on ECF. However, counsel for Respondent provided the Court copies of the transcripts and certified that they were sent to Petitioner.

293).  While Officer Vera remained with the bookbag, Officer McLaughlin walked up the stairs and confirmed that Petitioner was the individual who he saw throw the bag over the railing. (*Id.* at 207, 236–37).  Following this, Officer McLaughlin returned to the bag and removed the firearm and the magazine clip. (*Id.* at 209).  The firearm was a nine-millimeter semi-automatic pistol, known as a Luger, loaded with a round in the chamber and 18 cartridges in the magazine. (*Id.* at 212, 280–81, 284).  Officer McLaughlin unloaded the firearm and discovered additional rounds of ammunition as well as a t-shirt in the bookbag. (*Id.* at 209, 240).

The Crime Scene Unit responded shortly thereafter and took possession of the firearm, magazine clip, ammunition and bookbag. (Trial Transcript at 210, 241–42).  Following this, Officer McLaughlin returned to the second floor, took custody of Petitioner, and transported him to the detective division. (*Id.* at 242).  Ballistic testing later confirmed that the firearm was operable. (*Id.* at 280, 283).

**B.  Suppression Hearing**

On February 22, 2011, the court conducted a *Mapp/Dunaway* hearing to determine the admissibility of the recovered firearm and ammunition. (Feb. 22, 2011 Transcript[3] at 14–15). Petitioner's counsel argued that evidence should be suppressed because Petitioner's initial stop was unlawful. (*Id.* at 57–58).[4]  After hearing testimony from Officer McLaughlin, (*id.* at 16–38), the court determined that the officers' initial stop and seizure of Petitioner was lawful, (*id.* at 64–66).  The court therefore ruled that the recovered evidence could be used at trial. (*Id.* at 70).

---

[3] Refers to the suppression hearing transcript dated February 22, 2011.

[4] The court also conducted a *Huntley* hearing to determine the voluntariness of a statement given by Petitioner to Detective Scott Griffith following his arrest. (Feb. 22, 2011 Transcript at 38–53).  The court found that Petitioner's statement was not obtained through impermissible coercion and could be used at trial. (*Id.* at 68).  However, the prosecution did not call Detective Griffith to testify at trial. (*See generally* Trial Transcript).

## C. Motion to Withdraw as Counsel

Attorney Ada Medina ("Attorney Medina") represented Petitioner during the criminal trial. On March 22, 2011—one day before the trial was scheduled to begin—Attorney Medina requested that she be relieved as trial counsel for Petitioner. (March 22, 2011 Transcript[5] at 2). As grounds for withdrawal, Attorney Medina claimed that she became a trial witness because a key witness for Petitioner went missing and she was the only person who spoke to him. (*Id.*). The missing witness was Montay Vaden, who told Attorney Medina during a conversation in February 2010 that he possessed the firearm on the night Petitioner was arrested. (*Id.* at 2–3, 6, 9–11). Attorney Medina argued that Vaden's statement was admissible as a declaration against penal interest. (*Id.* at 4). However, the court ultimately determined that Vaden's statement was not admissible:

> [t]he fact that this individual called you up over a year ago to say he was at the location of the crime and he had the gun, does not exonerate your client. It doesn't mean your client didn't have the gun. He never said the defendant never had the gun and it doesn't go toward that reliability factor at all either . . . no one is coming forward to underline [*sic*] the trustworthiness of this statement made by this individual who doesn't really take your client off the hook. He may be inculpating himself, but he is not saying your client didn't have it.

(*Id.* at 15–16). Consequently, the court denied Attorney Medina's request to withdraw as counsel to testify as a witness at trial. (*Id.* at 16).

## D. Jury Selection

The court conducted jury selection on March 23, 2011. (Trial Transcript at 1). During jury selection, one prospective juror told the court that she overheard another prospective juror say, "very abusive things verbally about the law, the Court, using bad language." (*Id.* at 133–34). The prospective juror who overheard the remarks stated, "I thought this person is really angry

---

[5] Refers to the pre-trial conference transcript, dated March 22, 2011.

and I wouldn't want to serve with him." (*Id.* at 134).  Both of these prospective jurors were excused on consent. (*Id.* at 123, 179–80).

### E.  The Trial

Petitioner's trial was conducted from March 23 to 28, 2011.  The prosecution called Officer Robert McLaughlin, Detective Roger Piccirilli, Detective Frank Nicolosi and Officer Thomas Spaun as witnesses. (Trial Transcript at 200, 263, 277, 286).  Defense counsel cross-examined each witness, (*id.* at 257, 275, 285, 301), but did not put on a direct case or call any additional witnesses, (*id.* at 317).  Following the prosecution's case-in-chief, defense counsel moved to dismiss the indictment as a matter of law, arguing that the prosecution failed to present a prima facie case. (*Id.* at 314).  The trial court denied Petitioner's motion to dismiss. (*Id.* at 315).

### F.  Verdict and Sentencing

On March 28, 2011, the jury found Petitioner guilty of one count of criminal possession of a weapon in the second degree. (Trial Transcript at 368–69).  During Petitioner's sentencing hearing, the court found Petitioner to be a violent predicate felony offender because Petitioner was previously convicted of first-degree robbery in October 1998. (Sentencing Hearing Transcript[6] at 2–3).  Accordingly, the court sentenced Petitioner to ten years of imprisonment to run consecutively with Petitioner's incarceration for an unrelated criminal matter, with five years post-release supervision. (*Id.* at 7).

### G.  N.Y. CPL § 440.10 Motion

Pursuant to C.P.L. § 440.10 ("§ 440.10"), Petitioner filed a *pro se* post-judgment motion dated June 26, 2012, arguing that he was denied effective assistance of counsel because his counsel failed to request that Ronald Mack, Kevin Lewis, Maritza Santiago and Montay Vaden

---

[6] Refers to Petitioner's sentencing hearing transcript, dated May 17, 2011.

testify before the grand jury or call them as trial witnesses. (Docket No. 15-1 at 7–11). The state opposed. (Docket No. 15-2). On November 16, 2012, Petitioner filed a supplemental brief to his § 440.10 Motion, which included an affidavit from Kevin Lewis. (Docket No. 15-4). The state submitted a supplemental affirmation in opposition. (Docket No. 15-5).

Petitioner's trial counsel submitted an affirmation after Petitioner waived attorney-client privilege. (Docket No. 15-3). The affirmation detailed Attorney Medina's efforts to contact Petitioner's witnesses. On January 29, 2010, Attorney Medina attempted to contact Montay Vaden[7] and Maritza Santiago through phone numbers provided by Petitioner, but she was unable to speak with either witness. (*Id.* at 2–3). On February 1, 2010, Petitioner provided Attorney Medina with additional witness names, including Ronald Mack, and a home address for Mack. (*Id.* at 3). However, Petitioner only provided nicknames for the other witnesses. (*Id.*). He did not provide their legal name or contact information. (*Id.*). That same day, Attorney Medina received a call from Vaden, who "indicated that the gun belonged to him and that he was willing to sign an affidavit." (*Id.*). On February 17, 2010, Attorney Medina's investigator attempted to speak with Vaden and Mack at their homes, but he was unable to locate either individual. (*Id.* at 4).

On March 24, 2010, evidence was presented to the grand jury in the underlying criminal matter. (Docket No. 15-3 at 4). Attorney Medina did not request that Petitioner's witnesses testify because she had been unable to secure any witness statements or meet in-person with Vaden. (*Id.*). Following Petitioner's indictment, Attorney Medina encouraged Petitioner, who was released on bail, to locate the potential witnesses. (*Id.* at 4–5). Petitioner made an appointment with Attorney Medina to meet at 175 Stanley Avenue with his witnesses on July 7,

---

[7] Attorney Medina believed Vaden's surname was "Daden" until the March 22, 2011 pre-trial conference. (*See* Docket No. 15-3 at 2, 8).

2010. (*Id.* at 5). However, upon arrival, only Petitioner, Mack, and a few neighbors who did not witness the incident were present. (*Id.*). Moreover, Attorney Medina could not speak to Mack because he was represented by an attorney in a separate criminal matter. (*Id.*).

Between August and December 2010, Petitioner informed Attorney Medina that he could not locate Vaden, and that he was "in the wind." (Docket No. 15-3 at 6). At some point, Attorney Medina received permission to speak with Mack, but Mack did not show up for a scheduled meeting or return Attorney Medina's phone calls. (*Id.*). On March 10, 2011, Attorney Medina attempted to call Petitioner's witnesses with updated phone numbers. (*Id.* at 6–7). Attorney Medina was able to speak with Kevin Lewis. (*Id.* at 7). Lewis stated that he was present during the incident, but he did not see anyone with a bookbag or observe anyone throw anything over the railing. (*Id.*). Attorney Medina spoke with an additional witness named Tyson Bracey, who stated that he was unable to observe the alleged crime. (*Id.*).

On March 14, 2011, Attorney Medina's investigator spoke with Vaden and set up an appointment to meet in-person. (Docket No. 15-3 at 7). However, Vaden did not appear for the meeting. (*Id.*). Attorney Medina also set up an appointment to meet with Mack on March 17, 2011. (*Id.*). At the meeting, Mack claimed that Petitioner did not have the bookbag. (*Id.*). However, Mack also provided statements that Attorney Medina believed to be contrary to Petitioner's version of events. (*Id.*). Further, based on Mack's vantage point on the night in question, Attorney Medina determined that Mack would not have been able to see who had the bookbag. (*Id.*).

On March 22 and 23, 2011, Attorney Medina's investigator attempted to serve trial subpoenas on Vaden, Mack, Santiago, Lewis and Bracey. (Docket No. 15-3 at 8). The investigator successfully served Santiago and Lewis, but was unable to locate anyone at Mack or

Vaden's known addresses. (*Id.*). The investigator was informed that Vaden went to Hendersonville, Tennessee. (*Id.*). The investigator served Mack via nail-and-mail. (*Id.*). Santiago was the only witness who appeared for trial. (*Id.* at 9). Prior to trial, Santiago told Attorney Medina that she was unable to observe any of the people on the second-floor landing and she did not see anyone throw anything over the railing. (*Id.*). Accordingly, Attorney Medina opted not to call Santiago to testify. (*Id.*).

By Decision and Order dated May 30, 2013, the court denied Petitioner's ineffective assistance of counsel claim. (Docket No. 15-6). It held that Petitioner failed to establish that his trial counsel was ineffective because: (i) there was no indication that any of the four witnesses were available to testify before the grand jury; (ii) Lewis and Vaden were unavailable to testify at trial; and (iii) trial counsel reasonably chose not to call Mack or Santiago due to credibility concerns and the fact that neither confirmed they were able to see the bookbag at issue. (*Id.* at 10–11). Petitioner sought leave to appeal this decision, (Docket No. 15-7), which was denied on December 26, 2013, (Docket No. 15-8).

## H. Direct Appeal

Petitioner's appellate counsel submitted a brief to the Supreme Court of the State of New York, Appellate Division, Second Judicial Department (the "Second Department"), raising four challenges to Petitioner's conviction: (i) the trial court failed to suppress the evidence recovered as the fruit of an unlawful stop; (ii) the trial court erred in denying admission of Montay Vaden's declaration against penal interest; (iii) the trial court failed to investigate the jury pool's alleged prejudice stemming from the comments made by one of the prospective jurors; and (iv) ineffective assistance of trial counsel. (Docket No. 15-9). Petitioner claimed trial counsel was ineffective due to her failure to: (i) request a continuance to locate Montay Vaden, (ii) call Kevin Lewis and Martiza Santiago as witnesses, (iii) renew the application for admission of Montay

Vaden's statement, (iv) request a missing witness charge for Kevin Lewis, or (v) ask any questions during jury selection regarding potential jurors impartiality given their disclosures as crime victims and contacts with law enforcement. (*Id.* at 51–62). The state opposed. (Docket No. 15-10). By Decision and Order dated December 19, 2014, the Second Department affirmed Petitioner's conviction and sentence. (Docket No. 15-11).

By letter dated March 11, 2015, Petitioner, through his counsel, sought leave to appeal the Second Department's decision to the New York State Court of Appeals (the "Court of Appeals"). (Docket No. 15-12). The Court of Appeals denied Petitioner's leave application on May 11, 2015. (Docket No. 15-13).

## I. Habeas Corpus Petition

Petitioner timely filed the instant *pro se* Petition. (Docket No. 2). Respondent filed an opposition ("Opposition") to the Petition. (Docket No. 15). Petitioner submitted a reply ("Reply") in further support of his Petition. (Docket No. 19).

## II. APPLICABLE LAW

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 97 (2011). "Before a federal district court may review the merits of a state court criminal judgment in a habeas corpus action, the court must first determine whether the petitioner has complied with the procedural requirements set forth in 28 U.S.C. §§ 2244 and 2254." *Visich v. Walsh*, No. 10 Civ. 4160 (ER) (PED), 2013 WL 3388953, at *9 (S.D.N.Y. July 3, 2013).[8] The procedural and substantive standards are summarized below.

---

[8] In accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) and Local Rule 7.2 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York, a copy of this case and other

## A. Timeliness Requirement

Federal habeas corpus petitions are subject to AEDPA's strict, one-year statute of limitations. 28 U.S.C. § 2244(d)(1). The statute allows for four different potential starting points to determine the limitations period and states that the latest of these shall apply. As the statute explains:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D). However, this one-year period will be tolled during the pendency of a properly filed application for post-conviction relief. 28 U.S.C. § 2244(d)(2). This period may also be subject to equitable tolling, but "only in the rare and exceptional circumstance." *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (internal quotation marks omitted); *see also Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)) (setting forth a two-step analysis for equitable tolling).

---

cases, *infra*, that are unpublished or only available by electronic database, accompany this Report and Recommendation and shall be simultaneously delivered to *pro se* Petitioner.

**B. Exhaustion as a Procedural Bar**

A habeas petition may not be granted unless the petitioner has exhausted his claims in state court. *See* 28 U.S.C. § 2254(b). As the statute prescribes:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that-
>
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B)(i) there is an absence of available State corrective process; or
>>
>> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> . . .
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(b)-(c).

Exhaustion requires a prisoner to have "fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts." *Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (internal quotation marks omitted). If a petitioner "cites to specific provisions of the U.S. Constitution in his state court brief, the petitioner has fairly presented his constitutional claim to the state court." *Davis v. Strack*, 270 F.3d 111, 122 (2d Cir. 2001); *see also Reid v. Senkowski*, 961 F.2d 374, 376 (2d Cir. 1992) (even "a minimal reference to the Fourteenth Amendment" presents a federal constitutional claim to the state courts). However, a petitioner may fairly present his claim even without citing to the U.S. Constitution. As the Second Circuit has stated:

> the ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim, even without citing chapter and verse of the Constitution, include (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis

in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Daye v. Attorney Gen. of State of N.Y.*, 696 F.2d 186, 194 (2d Cir. 1982). Fair presentation includes petitioning for discretionary review in the state's highest appellate court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 839–40 (1999) ("[A] state prisoner must present his claims to a state supreme court in a petition for discretionary review in order to satisfy the exhaustion requirement[.]").

However, "a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997) (internal quotation marks omitted). In such cases, although the claim is technically unexhausted, the district court may deem the claim to be exhausted but procedurally barred from habeas review. *See id.* at 140 ("[A] claim is procedurally defaulted for the purposes of federal habeas review where 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 (1991)).

Under New York law, defendants are permitted only one direct appeal. *See Dasney v. People of the State of New York*, No. 15 Civ. 5734 (RJS), 2017 WL 253488, at *5 (S.D.N.Y. Jan. 19, 2017) (citing N.Y. Ct. App. R. § 500.20);[9] *see also Roa v. Portuondo*, 548 F.Supp.2d 56, 78 (S.D.N.Y. 2008) ("Any attempt to raise these claims at this stage as part of a direct appeal would be rejected because a criminal defendant is entitled to only one direct appeal and one application

---

[9] This rule states, in relevant part, that a letter application for leave to appeal "shall indicate . . . (2) that no application for the same relief has been addressed to a justice of the Appellate Division, as *only one application is available*." N.Y. Ct. App. R. 500.20(a) (emphasis added).

for leave to appeal to the Court of Appeals."). Petitioners must raise record-based claims by direct appeal rather than by a collateral motion in state court. *See, e.g.*, *O'Kane v. Kirkpatrick*, No. 09 Civ. 05167 (HB)(THK), 2011 WL 3809945, at *7 (S.D.N.Y. Feb. 15, 2011) ("[A]ll claims that are record-based must be raised in a direct appeal. . . . It is only when a defendant's claim hinges upon facts outside the trial record, that he may collaterally attack his conviction by bringing a claim under CPL § 440.10."), *report and recommendation adopted*, 2011 WL 3918158 (S.D.N.Y. Aug. 25, 2011); *Lowman v. New York*, No. 09 Civ. 0058T, 2011 WL 90996, at *9 (W.D.N.Y. Jan. 11, 2011) ("Collateral review of this claim—by way of another CPL § 440 motion—is also barred because the claim is a matter of record that could have been raised on direct appeal, but unjustifiably was not.)" (citing N.Y. C.P.L. § 440.10(2)(c)).[10]

To avoid the procedural default of an unexhausted claim, a petitioner may show "cause for the default and prejudice, or that failure to consider the claim will result in miscarriage of justice, *i.e.*, the petitioner is actually innocent." *Sweet v. Bennett*, 353 F.3d 135, 141 (2d Cir. 2003).

## C. Adequate and Independent State Grounds as a Procedural Bar

"It is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Coleman*, 501 U.S. at 729); *see also Downs v. Lape*, 657 F.3d 97, 23 (2d Cir. 2011). This preclusion applies even if the state court alternatively rules on the merits

---

[10] N.Y. C.P.L. § 440.10(2)(c) states, in relevant part, that a court must deny a § 440.10 motion to vacate judgment when "[a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him."

of the federal claim, so long as there is an adequate and independent state ground that would bar the claim in state court. *See, e.g.*, *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999).

"A state court decision will be 'independent' when it 'fairly appears' to rest primarily on state law." *Taylor v. Connelly*, 18 F. Supp. 3d 242, 253 (E.D.N.Y. 2014) (quoting *Jimenez v. Walker*, 458 F.3d 130, 138 (2d Cir. 2006)).  In the normal case, a ground is adequate "only if it is based on a rule that is 'firmly established and regularly followed' by the state in question." *Garcia*, 188 F.3d at 77 (quoting *Ford v. Georgia*, 498 U.S. 411, 423–24 (1991)); *see also Cotto v. Herbert*, 331 F.3d 217, 239 (2d Cir. 2003).  A decision that a state procedural rule is inadequate should not be made "lightly or without clear support in state law." *Garcia*, 188 F.3d at 77 (internal quotation marks omitted).  However, "there are 'exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question.'" *Cotto*, 331 F.3d at 240 (quoting *Lee v. Kemna*, 534 U.S. 362, 376 (2002)).  In determining whether a case is "exceptional" in that the state ground should be held inadequate, the Second Circuit uses the following factors as "guideposts":

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had substantially complied with the rule given the realities of trial, and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

*Id.* (internal quotation marks omitted).

To avoid a procedural default based on independent and adequate state grounds, a petitioner must "show 'cause' for the default and 'prejudice attributable thereto,' . . . or

demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'" *Harris*, 489 U.S. at 262 (quoting *Murray v. Carrier*, 477 U.S. 478, 485 (1986)).

## D. AEDPA Standard of Review

When a federal court reaches the merits of a habeas petition, AEDPA prescribes a "highly deferential" standard for reviewing state court rulings. *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Fischer v. Smith*, 780 F.3d 556, 561 (2d Cir. 2015). An application for a writ of habeas corpus:

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

Courts have interpreted the phrase "adjudicated on the merits" in AEDPA as meaning that a state court "(1) dispose[d] of the claim on the merits, and (2) reduce[d] its disposition to judgment." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001) (internal quotation marks omitted). Courts examine the "last reasoned decision" by the state courts in determining whether a federal claim was adjudicated on the merits. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."). "[W]hen a state court issues an order that summarily rejects without discussion *all* the claims raised by a defendant, including a federal claim that the defendant subsequently presses in a federal habeas proceeding, the federal habeas court must presume (subject to rebuttal) that the

federal claim was adjudicated on the merits." *Johnson v. Williams*, 568 U.S. 289, 293 (2013)

(emphasis in original). The same presumption applies when "a state court rules against the

defendant and issues an opinion that addresses some issues but does not expressly address the

federal claim in question." *Id*. at 292. This "presumption is a strong one that may be rebutted

only in unusual circumstances." *Id.* at 302.

If a state court adjudicates a federal claim on the merits, the Court must apply AEDPA

deference to that state court ruling.[11] 28 U.S.C. § 2254(d)(1)-(2). In the context of AEDPA

deference, the phrase "clearly established Federal law" means "the holdings, as opposed to the

dicta, of [the Supreme Court of the United States'] decisions as of the time of the relevant state-

court decision." *Williams v. Taylor*, 529 U.S. 362, 365 (2000). "A state court decision is

contrary to such clearly established federal law if it 'applies a rule that contradicts the governing

law set forth in the Supreme Court's cases or if the state court confronts a set of facts that are

materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a

result different from its precedent.'" *Lewis v. Conn. Comm'r of Corr.*, 790 F.3d 109, 121 (2d Cir.

2015) (quoting *Boyette v. Lefevre*, 246 F.3d 76, 90 (2d Cir. 2001)).

A state court decision involves an "unreasonable application" of Supreme Court

precedent if: (1) "the state court identifies the correct governing legal rule from [Supreme Court]

cases but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "the

state court either unreasonably extends a legal principle from [Supreme Court] precedent to a

new context where it should not apply or unreasonably refuses to extend that principle to a new

context where it should apply." *Williams*, 529 U.S. at 407. For a federal court to find a state

---

[11] If, by contrast, a state court does not adjudicate a federal claim on the merits, "AEDPA deference is not required. . . . [and] conclusions of law and mixed findings of fact and conclusions of law are reviewed de novo." *DeBerry v. Portuondo*, 403 F.3d 57, 66-67 (2d Cir. 2005).

court's application of Supreme Court precedent unreasonable, the state court's decision must have been more than "incorrect or erroneous" -- it must have been "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). In other words, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004)). However, "the trial court's decision need not teeter on 'judicial incompetence' to warrant relief under § 2254(d)." *Alvarez v. Ercole*, 763 F.3d 223, 229 (2d Cir. 2014) (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). If a state court decision does not contain reasons for the dismissal of a defendant's federal claim, the Court must "consider 'what arguments or theories . . . could have supported[] the state court's decision,' and may grant habeas only if 'fairminded jurists could [not] disagree that those arguments or theories are inconsistent with the holding in a prior decision of' the Supreme Court." *Lynch v. Superintendent Dolce*, 789 F.3d 303, 311 (2d Cir. 2015) (alterations in original) (quoting *Richter*, 562 U.S. at 102).

## III. DISCUSSION

Construing the Petition broadly, *see Williams v. Kullman*, 722 F.2d 1048, 1051 (2d Cir. 1983) ("pleading requirements in habeas proceedings should not be overly technical and stringent"), the Court finds that Petitioner asserts the following grounds for relief. First, Petitioner argues that the trial court should have suppressed the evidence recovered during his arrest because the initial stop was unlawful. (Petition[12] at 5). Second, Petitioner maintains that the trial court erred in denying admission of Montay Vaden's declaration against penal interest. (*Id.* at 7). Third, Petitioner contends that the trial court failed to inquire into whether the jury

---

[12] Refers to Petitioner's habeas corpus petition. (Docket No. 2).

pool was prejudiced as a result of the comments made by one of the prospective jurors. (*Id.* at 8).

Fourth, Petitioner claims that his trial counsel deprived him of effective assistance of counsel by

failing to: (i) request that his witnesses testify before the grand jury, (ii) conduct an adequate pre-

trial investigation, (iii) request that the court investigate the jury pool's prejudice, (iv) request a

continuance to locate Montay Vaden, (v) request a missing witness charge for Kevin Lewis, and

(vi) call Petitioner's witnesses at trial. (*Id.* at 10).

Respondent argues that the Petition should be denied for several reasons. First,

Respondent asserts that Petitioner's declaration against penal interest allegation fails to state a

federal claim and lacks merit. (Opp.[13] at 5). Second, Respondent maintains that Petitioner's jury

selection claim is procedurally barred and otherwise without merit. (*Id*. at 19). Finally,

Respondent contends that Petitioner's ineffective assistance of counsel claims are without merit.

(*Id.* at 24). Respondent did not address Petitioner's contention that the initial stop was unlawful.

At the outset, the Court notes that the Petition was timely filed. The Court of Appeals

denied Petitioner's leave application on May 11, 2015, (Docket No. 15-13), and Petitioner

certified that he delivered his Petition to prison authorities for mailing on June 15, 2015, (Docket

No. 2 at 15). For the reasons that follow, I respectfully recommend that the Petition be denied in

its entirety.

## A.  Fourth Amendment Suppression Claim

Petitioner challenges the admission of the pistol and ammunition recovered from the

bookbag arguing that it was the fruit of an unlawful stop. In *Stone v. Powell*, the Supreme Court

held that "where the State has provided an opportunity for full and fair litigation of a Fourth

---

[13] Refers to Respondent's opposition to the Petition. (Docket No. 15). Citations to Respondent's opposition and all briefs refer to the ECF page number.

Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. 465, 494 (1976) (citations omitted).  Accordingly, "habeas review of Fourth Amendment claims is allowed 'in only one of two instances: (a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process.'" *Garcia v. Lee*, No. 10 Civ. 5287 (JPO) (JLC), 2012 WL 3822137, at *17 (S.D.N.Y. Aug. 28, 2012), *report and recommendation adopted*, 2014 WL 406209 (S.D.N.Y. Feb. 3, 2014) (quoting *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992)).

Here, Petitioner does not argue that New York failed to provide a corrective procedure to redress his alleged Fourth Amendment claim, nor could he.  The Second Circuit has recognized that New York provides a full and fair opportunity to litigate Fourth Amendment claims. *See Capellan*, 975 F.2d at 70 n. 1 ("the federal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in N.Y. Crim. Proc. Law § 710.10 et seq. . . ., as being facially adequate.") (internal quotation marks and citation omitted).  Moreover, there is no evidence indicating that there was an unconscionable breakdown in the underlying suppression process.  The trial court held a suppression hearing, which included witness testimony and cross-examination, prior to denying Petitioner's motion to suppress. (Feb. 22, 2011 Transcript at 70). "[M]ere dissatisfaction or disagreement with the outcome of a suppression motion is not sufficient to establish that an 'unconscionable breakdown' occurred in the existing process in violation of the petitioner's Fourth Amendment rights under the Constitution." *Cook v. Donnelly*, No. 02-CV-6073(VEB), 2009 WL 909637, at *5 (W.D.N.Y. Mar. 31, 2009) (quoting

*Capellan*, 975 F.2d at 71).  On appeal, the Second Department considered and affirmed the trial court's decision, holding that "[a]s [Petitioner's] abandonment of the property was not precipitated by an illegal police conduct, the County Court properly declined to suppress the gun." (Docket No. 15-11 at 1); *see Munford v. Graham*, No. 09 Civ. 7899 (DLC) (AJP), 2010 WL 644435, at *17 (S.D.N.Y. Feb. 24, 2010), *report and recommendation adopted*, 2010 WL 2720395 (S.D.N.Y. June 29, 2010), *aff'd*, 467 F. App'x 18 (2d Cir. 2012) (noting that no breakdown occurred because petitioner "had a full and fair opportunity to litigate his Fourth Amendment claim on direct appeal"); *Kelly v. Conway,* No. 10-CV-3053 (ENV), 2011 WL 3555823, at *4 (E.D.N.Y. Aug. 11, 2011) (denying habeas relief where Petitioner "took full advantage of the New York procedures" through participating in a pretrial suppression hearing and appealing the trial court's determination to the Second Department).  Consequently, "given the absence of any evidence that there was a breakdown in the hearing afforded to [Petitioner] on his claims, the Court cannot relitigate these issues on habeas review." *Kelly*, 2011 WL 3555823, at *4.

Accordingly, I respectfully recommend that Petitioner's Fourth Amendment suppression claim be denied.

## B.  Montay Vaden's Hearsay Statement

Petitioner argues that the trial court should have admitted Montay Vaden's statement as declaration against penal interest.  This claim does not provide a basis for federal habeas relief. In general, errors of state evidentiary matters "wholly separate from the question of whether the admission of such evidence violates the federal Constitution . . . are not cognizable on habeas review." *Sorrentino v. LaValley*, No. 12-CV-7668(VSB)(DF), 2016 WL 11482062, at *15 (S.D.N.Y. Feb. 3, 2016), *report and recommendation adopted*, 2016 WL 3460418 (S.D.N.Y. June 21, 2016); *see also Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) ("state trial court

evidentiary rulings generally are not a basis for habeas relief.").  Here, neither the Petition nor

Petitioner's state appellate briefs identify or reference any federal constitutional right allegedly

violated by the court's failure to admit Vaden's statement. (*See* Petition at 7); (Docket No. 15-9

at 45–48); (Docket No. 15-12 at 7–8).  Rather, they exclusively frame this claim in state-law

evidentiary terms.  Consequently, "any federal due-process claim that Petitioner may now be

seeking to raise . . . must be considered unexhausted and procedurally barred." *Sorrentino*, 2016

WL 11482062, at *15 (internal citations omitted).

       Moreover, Petitioner cannot avoid procedural default through a showing of "cause for

default and prejudice."  *See supra* Section II.B.  Excuse of procedural default requires a showing

that some external impediment actually prevented counsel from raising the claim. *McCleskey v.

Zant*, 499 U.S. 467, 497 (1991); *Murray v. Carrier*, 477 U.S. 478, 492 (1986).  Petitioner

concedes that the claim is procedurally barred, but argues that it would not be barred but for his

trial counsel's errors. (Reply[14] at 2).  Though Petitioner argues that his trial counsel was

constitutionally ineffective, this claim fails. *See infra* Section III.D; *McCleskey*, 499 U.S. at 494

("Attorney error short of ineffective assistance of counsel . . . does not constitute cause and will

not excuse a procedural default.").  Further, this contention does not excuse Petitioner's failure to

allege a constitutional violation in his appeal to the Second Department, his request for leave to

appeal to the Court of Appeals, or his Petition.  Therefore, the Court is barred from reviewing

this claim.

       Assuming this claim was not procedurally barred from review, it fails on the merits.

"The burden on a petitioner challenging an evidentiary decision is a heavy one." *Branham v. Lee*,

No. 10 Civ. 3074(NRB), 2011 WL 5979530, at *4 (S.D.N.Y. Nov. 29, 2011). "Federal habeas

---

[14] Refers to Petitioner's reply in support of the Petition. (Docket No. 19).

courts are not to 'reexamine state-court determinations on state-law questions' and are 'limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.'" *Id.* (quoting *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)). "Moreover, the Supreme Court has expressed reluctance to 'impose constitutional constraints on ordinary evidentiary rulings by state courts.'" *Id.* (quoting *Crane v. Kentucky*, 476 U.S. 683, 689 (1986)).

Here, the Second Department held Vaden's statement was not relevant to the issues presented at trial. (Docket No. 15-11 at 2). Under AEDPA's deferential standard of review, there is no basis for finding that the state court decision excluding Vaden's hearsay statement was contrary to, or an unreasonable application of, established federal law. Even if Vaden's statement was admissible, there was minimal probative value to the statement because it did not exculpate Petitioner or "'create[] a reasonable doubt that did not otherwise exist.'" *Arena v. Kaplan*, 952 F. Supp. 2d 468, 492–93 (E.D.N.Y. 2013) (quoting *United States v. Agurs*, 427 U.S. 97, 112 (1976)); s*ee Vasquez v. Henderson*, No. CV-89-0823, 1991 WL 17291, at *2 (E.D.N.Y. Jan. 30, 1991), *aff'd*, 953 F.2d 636 (2d Cir. 1991) ("Even if the co-defendant's statement was somehow admissible [as a declaration against penal interest], the erroneous exclusion of this minimally probative material could hardly have rendered the trial fundamentally unfair.")

Accordingly, I respectfully recommend that Petitioner's request for habeas relief based on the exclusion of Vaden's hearsay statement be denied.

## C. Jury Selection Claim

Petitioner claims that his right to an impartial jury was denied when the trial court did not investigate potential prejudice to the jury panel as a result of the comments made by one of the prospective jurors. (Petition at 8); (Reply at 2–4).

Respondent correctly argues that this claim is procedurally barred. (Docket No. 15 at 20). Petitioner's counsel neither objected to the trial court's response, nor requested further inquiry to

investigate potential prejudice to the remainder of the jury pool. On appeal, the Second

Department ruled that this claim was unpreserved for appellate review. (Docket No. 15-11 at 2).

This claim is therefore procedurally barred from federal habeas review because it was denied on

independent and adequate state grounds. *See, e.g., Gutierrez v. Smith*, 702 F.3d 103, 110–11 (2d

Cir. 2012) (failing to comply with New York's contemporaneous objection rule, and thus failing

to preserve a claim for appeal, generally bars federal habeas review); *Jenkins v. Beaver*, No. 01-

CV-0483 (JBW), 2003 WL 23185773, at *3 (E.D.N.Y. Oct. 28, 2003) (rejecting jury selection

claim as procedurally barred for failure to object). While Petitioner argues that his counsel was

ineffective, this claim fails. *See infra* Section III.D; *McCleskey*, 499 U.S. at 494. Therefore, the

Court is barred from reviewing this claim.

Even if this claim was not procedurally barred, it is without merit. The Sixth

Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a

speedy and public trial, by an impartial jury of the State and district wherein the crime shall have

been committed." U.S. Const. Amend. VI; *see also Irvin v. Dowd*, 366 U.S. 717, 722 (1961)

("[T]he right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial,

'indifferent' jurors."). The process of selecting a jury is within the wide discretion of the trial

court. *Skilling v. United States*, 561 U.S. 358, 386 (2010). On habeas review, a state court is

entitled to a "presumption of correctness" after determining that a jury was impartial. *See Wheel

v. Robinson*, 34 F.3d 60, 65 (2d Cir. 1994). Further, "the Supreme Court has made it clear that

'the trial court's findings of impartiality [may] be overturned only for manifest error.'" *Knapp v.

Leonardo*, 46 F.3d 170, 176 (2d Cir. 1995) (quoting *Patton v. Yount,* 467 U.S. 1025, 1031

(1984)).

Petitioner cannot overcome this burden. The prospective juror's comments concerned the court and the law generally. (Trial Transcript at 133–34) (claiming that the prospective juror said, "very abusive things verbally about the law, the Court, using bad language."). The comments were entirely unrelated to Petitioner or the facts underlying the case. The concerns raised by the prospective juror who heard these comments did not stem from fear of bias or prejudice. She only expressed her concern about serving with an angry juror. (*Id.* at 134). Furthermore, both prospective jurors were excused on consent. (*Id.* at 123, and 179–80). Nor is there any indication that any other potential juror heard these remarks. The empaneled jury did not display any signs of impartiality resulting from the prospective juror's generalized comments about the judicial system. (*See generally id.*). In addition, the trial court ensured that the selected jurors remained impartial by giving detailed instructions during jury selection and trial. (*Id.* 180–81, 189–95, 311, 320–32). Consequently, Petitioner cannot establish that the trial court's response to the comments resulted in manifest error. *Knapp*, 46 F.3d at 176; *Hicks v. Bellnier*, 43 F. Supp. 3d 214, 234 (E.D.N.Y. 2014) (denying habeas relief where the potential juror who made off-record remarks was excused by the trial court and there was no indication that any potential juror heard the remarks).

Accordingly, I respectfully recommend that Petitioner's impartial jury claim be denied.

## D.  Ineffective Assistance of Counsel

Petitioner's final claim is that trial counsel deprived him of effective assistance of counsel by failing to: (i) request that Petitioner's witnesses testify before the grand jury, (ii) secure statements of witnesses who were present during the incident, (iii) request that the court make an inquiry regarding the potential prejudice to the jury panel, (iv) request a continuance to locate Montay Vaden, (v) request a missing witness charge for Kevin Lewis, and (vi) call any witnesses at trial. (Petition at 10).

The Supreme Court has long recognized that "a person accused of a federal or state crime has the right to have counsel appointed," and further that "'the right to counsel is the right to the effective assistance of counsel.'" *Strickland v. Washington,* 466 U.S. 668, 685–87 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). To establish ineffective assistance of counsel, a habeas petitioner must demonstrate that his lawyer's performance "fell below an objective standard of reasonableness," *id.*, 466 U.S. at 688, and that there is a "reasonable probability" that but for counsel's error, "the result of the proceeding would have been different," *id.* at 694. "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Id.* at 700. Moreover, the Supreme Court has emphasized that when a petitioner brings a claim for ineffective assistance of counsel, "AEDPA review is doubly deferential, because counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (citations and internal quotation marks omitted); *Burt v. Titlow*, 571 U.S. 12, 15 (2013) (explaining that the doubly deferential standard of review must give "both the state court and the defense attorney the benefit of the doubt").

**1. Grand Jury Testimony**

Petitioner's claim of ineffective assistance of counsel for failure to request that Petitioner's witnesses testify before a grand jury is misguided. Courts have consistently held that there is no federal constitutional right to a grand jury in a state criminal prosecution. *See Fields v. Soloff*, 920 F.2d 1114, 1116 (2d Cir. 1990). "While New York's constitution creates a right to indictment by a grand jury for felony charges, state law governs how these proceedings are to be conducted and creates the remedies for any procedural violations. Thus, any alleged impropriety in [P]etitioner's grand-jury proceeding arises out of state law and cannot form the basis for

federal habeas relief." *Nelson v. N.Y.*, No. 10 Civ. 9021 (LTS)(HBP), 2013 WL 796276, at *2 (S.D.N.Y. Mar. 5, 2013); *see Velez v. People of the State of N.Y.*, 941 F. Supp. 300, 315 (E.D.N.Y. 1996) ("Petitioner's assertion of a defective grand jury proceeding in the state court, albeit within the confines of an ineffective assistance of counsel claim, is not cognizable on federal habeas corpus.").

Assuming Petitioner alleged a cognizable constitutional claim, it fails on the merits. Trial counsel made repeated unsuccessful attempts to locate and speak with Petitioner's witnesses prior to Petitioner's indictment. (Docket No. 15-3 at 2–4). Moreover, even if the witnesses were available, the state court found that trial counsel's decision was a sound strategic decision "to avoid creating a record for cross examination at later proceedings or revealing defense strategy in a non-adversarial setting." (Docket No. 15-6 at 10). This finding is neither contrary to, nor an unreasonable application of, established federal law. Further, any error was rendered harmless by Petitioner's jury conviction. *See Batchilly v. Nance*, No. 08 Civ.7150(GBD)(AJP), 2010 WL 1253921, at *30 (S.D.N.Y. Apr. 2, 2010), *report and recommendation adopted*, 2011 WL 1226260 (S.D.N.Y. Mar. 30, 2011) ("A jury conviction transforms any defect connected with the grand jury's charging decision into harmless error because the trial conviction establishes probable cause to indict and also proof of guilt beyond a reasonable doubt.").

Accordingly, I respectfully recommend that Petitioner's claim for habeas relief based on the grand jury proceedings be denied.

## 2. Jury Pool Prejudice

Petitioner claims that trial counsel deprived him of effective assistance of counsel by failing to request that the Court determine if the jury pool was prejudiced by the prospective juror's comment about the law and court. The Court agrees with Respondent that this claim is unexhausted and procedurally barred from review. Petitioner's § 440.10 motion and direct

appeal both asserted that trial counsel's representation was ineffective under several theories. (Docket No. 15-1 at 8–11); (Docket No. 15-9 at 59–61). However, neither application asserted a Sixth Amendment violation due to trial counsel's failure to probe the jury pool's prejudice after the prospective juror's statement at issue. Therefore, this claim is unexhausted and procedurally barred from review. *See Martinez v. Colvin*, No. 17-CV-757 (PKC)(KHP), 2018 WL 6649608, at *3 (S.D.N.Y. Dec. 19, 2018) (denying habeas ineffective assistance of counsel claim as unexhausted where petitioner did not raise the claim in his § 440.10 motion or on direct appeal).

Even if this claim was exhausted, it fails on the merits. Under the first prong of the *Strickland* test, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689. "Trial counsel is accorded particular deference when conducting voir dire and [a]n attorney's actions during voir dire are considered to be matters of strategy." *Figueroa v. Ercole*, No. 09 Civ. 7225 (PGG)(JCF), 2013 WL 3655903, at *24 (S.D.N.Y. July 15, 2013) (internal quotation marks and citation omitted). Here, the comments at issue were wholly unconnected to Petitioner or the facts underlying the case and there was no reason to believe that any of the potential juror's impartiality was compromised. Consequently, trial counsel's conduct does not fall "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688–89. Assuming *arguendo* that trial counsel's omission was unreasonable, the record fails to show a "reasonable probability" that the result of the criminal trial would have been different as required under the second prong of the *Strickland* test. 466 U.S. at 688. Both the prospective juror who made the comments and the prospective juror who reported the comments were excused on consent, (Trial Transcript at 123, and 179–80), and there is no basis

to believe that Petitioner suffered any prejudice from his counsel's performance during jury selection. *See Schreter v. Artuz*, 225 F. Supp. 2d 249, 257 (E.D.N.Y. 2002) ("In light of the substantial evidence presented against [petitioner], it is highly unlikely that any alleged deficiency in counsel's performance during jury selection contributed to his guilty verdict.").

For these reasons, I respectfully recommend that Petitioner's claim premised on trial counsel's conduct during jury selection be denied.

### 3. Witness Investigation and Trial Testimony

Petitioner's assertion that trial counsel unreasonably failed to secure statements of witnesses who were present during the incident is without merit. Trial counsel did, in fact, investigate Petitioner's alleged witnesses. Between January 29, 2010 and March 23, 2011, trial counsel and her investigator made repeated attempts to speak with Petitioner's witnesses, schedule meetings and secure statements. (*See generally* Docket No. 15-3). However, Petitioner's witnesses could not be found and/or repeatedly missed scheduled meetings. (*Id.* at 4, 6–7). Moreover, Petitioner's contention that trial counsel errantly spelled Montay Vaden's surname as "Daden," (Reply at 4–6), does not constitute deficient representation. Trial counsel was able to eventually speak with Vaden during her pre-trial investigation, but Vaden failed to appear for a scheduled meeting in March 2011. (Docket No. 15-3 at 7).

Petitioner provided statements from Ronald Mack, Maritza Santiago and Kevin Lewis in his § 440.10 motion in support of his claim for ineffective assistance of counsel. (Docket No. 15-1 at 15–16); (Docket No. 15-4 at 16–20). These statements do not establish that trial counsel's pre-trial investigation violated Petitioner's constitutional right to effective assistance of counsel. As to Mack, the record is clear that trial counsel undertook multiple, and largely unsuccessful, attempts to discuss the incident with him. (*See* Docket No. 15-3 at 4–6). Mack claims that "if [he] was able to give [his] testimony [Petitioner] would not be in jail." (Docket No. 15-1 at 15).

However, "vague, conclusory, or speculative claims as to what evidence could have been produced by further investigation" are insufficient to "serve as the basis for a claim of ineffective assistance of counsel." *Moreau v. Ercole,* No. 08-CV-1545(ARR), 2011 WL 1741824, at *7 (E.D.N.Y. May 5, 2011). The sworn statements from Lewis and Santiago similarly fail to undercut the diligence of trial counsel's pre-trial investigation.

Petitioner next claims that trial counsel failed to call any of his witnesses at trial. (Petition at 10). The record belies this contention. Trial counsel attempted to serve Mack, Lewis, Santiago, Vaden and Bracey with trial subpoenas. (Docket No. 15-3 at 8). However, only Santiago appeared for trial. (*Id.* at 9). Prior to trial, Santiago told Attorney Medina that she was unable to observe any of the people on the second-floor landing. (*Id.* at 9). Santiago's affidavit appears to indirectly contest this. (Docket No. 15-1 at 16). However, "[t]he decision of whether to call any witnesses on behalf of a defendant, and which witnesses to call or omit to call, is a tactical decision which ordinarily does not constitute incompetence as a basis for a claim of ineffective assistance of counsel." *Parks v. Sheahan*, 104 F. Supp. 3d 271, 286 (E.D.N.Y. 2015) (internal quotation marks omitted). The trial court held that counsel's decision not to call Santiago was a reasonable tactical choice based on how Santiago would appear to a jury. (Docket No. 15-6 at 11). There is no basis for finding that the trial court's conclusion was inapposite to establish federal law. Moreover, even if counsel erred in failing to call Santiago as a witness, it is unlikely that the result of the Petitioner's trial would have been different under *Strickland's* second prong. 466 U.S. at 694.

Petitioner next maintains that trial counsel should have requested a missing witness charge for Kevin Lewis and a continuance to locate Montay Vaden. "To be entitled to a missing witness charge under New York law, Petitioner had to show that [the witness] was

knowledgeable about issues material to the trial, that [he] was expected to give non-cumulative testimony favorable to the prosecution, and that [he] was available to the prosecution." *Baptiste v. Ercole*, 766 F. Supp. 2d 339, 364 (N.D.N.Y. 2011). Here, the record demonstrates that Lewis's testimony would not have been favorable to the prosecution. (*See* Docket No. 15-4 at 16–20); *Jones v. Rivera*, No. 06-CV-5982(JFB), 2008 WL 2004168, at *15 (E.D.N.Y. May 7, 2008) (denying habeas relief for failure to issue a missing witness charge for a witness who would not have given favorable testimony to the prosecution). Further, Petitioner cannot demonstrate that Lewis was available because he failed to appear for trial despite being served with a subpoena. (Docket No. 15-3 at 10). Thus, trial counsel's decision not to request a missing witness charge did not fall below *Strickland's* objective standard of reasonableness because such an application lacked merit. 466 U.S. at 688.

Trial counsel's failure to request a continuance to locate Vaden did not amount to constitutionally deficient representation because there is no evidence that such a request would have been successful. "Petitioner is not entitled to a continuance as a matter of right. The grant or denial of a continuance is left to the sound discretion of the trial court." *McTier v. People of New York*, No. 07-CV-870 (DLI), 2009 WL 792087, at *6 (E.D.N.Y. Mar. 23, 2009). Here, the investigator attempted to locate Vaden to serve a trial subpoena on two separate occasions. (Docket No. 15-3 at 8). During the second attempt, the investigator learned that Vaden moved to Hendersonville, Tennessee. (*Id.*). Once trial counsel learned the correct spelling of Vaden's surname, the investigator made further attempts to ascertain Vaden's location without success. (*Id.* at 9); *see McTier*, 2009 WL 792087, at *6 (denying habeas relief where trial counsel did not request a continuance after his investigator made two unsuccessful attempts to locate the witness). Moreover, counsel's omission did not prejudice Petitioner because Vaden's proposed

testimony did not exculpate Petitioner. (Docket No. 15-3 at 4); (Docket No. 15-6 at 11).

Accordingly, trial counsel's failure to request a continuance does not warrant habeas relief, and I

respectfully recommend that Petitioner's claim on this ground be denied.

## IV. CONCLUSION

For the foregoing reasons, I respectfully recommend that the Petition be denied in its

entirety.  Further, because reasonable jurists would not find it debatable that Petitioner has failed

to demonstrate by a substantial showing that he was denied a constitutional right, I recommend

that no certificate of appealability be issued. *See* 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529

U.S. 473, 483–84 (2000).

The Clerk of Court is requested to mail a copy of this Report and Recommendation to the

*pro se* Petitioner.

## V. NOTICE

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 8(b) of the Rules Governing Section 2254

Cases in the United States District Courts, the parties shall have fourteen (14) days from the

receipt of this Report and Recommendation to serve and file written objections.  If copies of this

Report and Recommendation are served upon the parties by mail, the parties shall have

seventeen (17) days from receipt of the same to file and serve written objections. *See* Fed. R.

Civ. P. 6(d).  Objections and responses to objections, if any, shall be filed with the Clerk of the

Court, with extra copies delivered to the chambers of the Honorable Nelson S. Román at the

United States District Court, Southern District of New York, 300 Quarropas Street, White Plains,

New York 10601, and to the chambers of the undersigned at the same address.

Requests for extensions of time to file objections must be made to the Honorable Nelson

S. Román and not to the undersigned.  Failure to file timely objections to this Report and

Recommendation will preclude later appellate review of any order of judgment that will be rendered. *See* 28 U.S.C. § 636(b)(1); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008).

Dated:   February 27, 2019
         White Plains, New York

**RESPECTFULLY SUBMITTED,**

JUDITH C. McCARTHY
United States Magistrate Judge